TIMME and others, Respondents, vs. SQUIRES, Appellant.

*May 2—June 4, 1929.*

For the appellant there was a brief by *Hill & Miller* of Baraboo and *Hill, Thomann & Beckwith* of Madison, and oral argument by *Carl N. Hill* and *John T. Harrington*, both of Madison.

For the respondents there was a brief by *Grotophorst, Quale & Langer* of Baraboo, and oral argument by *Norman Quale*.

ROSENBERRY, C. J. The sole question presented upon this appeal is whether or not the evidence offered sustains the findings of the trial court. If the findings of fact are sustained, then the conclusions of law follow therefrom.

The question presented for decision is most easily disclosed by reference to a condensation of plaintiffs' Exhibit 1 and to a condensation of defendant's Exhibit 14.

EXHIBIT 1.

Exhibit 14.

The line which is in dispute in this case is the south boundary line of the mill property. The plaintiffs established their survey by reference to the calls of the original deed and a drill hole found in a cave in the rocks on the south side of Mirror Lake as indicated upon Exhibit 1. The boundaries of plaintiffs' property as disclosed upon Exhibit 1 are what is called the Tenant survey. The defendant established his claim by reference to the original plat of the village of Delton. There is at the southwest corner of block 54 a monument. There was found on the north line and between lots 5 and 4, block 44, a monument; likewise a monument between lots 16 and 17 on the south line of block 44. The plat of the village of Delton was surveyed in 1850 by one Edward Norris. The writing on the back of the plat material here was as follows:

"Description of Norris Village Plat: . . . It being in sections 21, 20, and 29 in Township 13 North of Range 6 East . . . Laid off Public Square on the North West part of the S. W. ¼ of Section 21 from the S. W. Corner of which bears a Black Oak eight inches in diameter N. 17¼ W. and distant 8 links. Also a white Oak 10 inches in diameter 77¼ E. and also 8 links the said S. W. South West Corner aforesaid public Square is the point of erection of monument Stone Erected a Monument Stone at the South West Corner of Church Square . . . South East Corner of Block 23 . . . is 40 links West and 9 links South of the ¼ Section Corner."

None of these monuments described as establishing the original survey were found. The defendant's surveyors, assuming that the monument found at the southwest corner of block 54 was correctly located with reference to the original survey, placed plaintiffs' lands as indicated on Exhibit 14, the northwest corner being on the south line of block 68. With this as a starting point, the surveyor's finding being confirmed by the fact that there were two iron stakes at that point, which were pointed out by a witness as being the corner of adjoining premises, the south line of plaintiffs' land

falls twenty-five feet three inches north of the line established by the Tenant survey. The area in dispute is that indicated on Exhibit 1 as Boat Landing. If the Tenant survey is sustained the boat landing is upon the property of the plaintiffs. If the defendant's survey is sustained the south line of plaintiffs' premises falls in the creek or lake as it is now called and the boat landing is not upon plaintiffs' premises. The three surveys offered on behalf of the defendant depend for their validity upon the starting point, which in each case is the monument found at the southwest corner of block 54. The fact that therefore the three surveyors established the northwest corner of plaintiffs' premises at the point indicated on Exhibit 14 proves that they are equally good surveyors,—that is, the additional surveys add nothing to the first survey except to establish its correctness as a survey.

There was much evidence offered and received with reference to the monument at the southwest corner of lot 54 and monuments at other points indicated, and there are many circumstances which tend to sustain defendant's contention in this case. The case was tried by the court, who viewed the premises, had the witnesses before it, and was familiar with all of the details of the evidence. There are two very persuasive circumstances which tend to sustain plaintiffs' contention and the findings of the trial court. By the terms of the deed the south boundary line of the premises conveyed was on the south side of Dell creek. The first course was south three chains and eighty links, crossing Dell creek to a stake, from which bears a birch tree ten inches in diameter south sixty and one-half degrees east and distant seven links; thence east four chains to a stake in a small cave in the rock. It was impossible to locate the stake at the southwest corner by reason of the fact that the surface had been disturbed by blasting which had been done by defendant's predecessors in title with plaintiffs' permission. Plaintiffs,

however, were able to testify as to its approximate location. The plaintiffs were able to identify at the southeast corner of the premises a cave in the floor of which was a drill hole which they identified as the place where a stake was found at the time the premises were resurveyed in 1894. If this hole in the floor of the cave be assumed to be a monument establishing the southeast corner, then the Tenant survey correctly establishes the south. line of plaintiffs' premises. According to all of the surveys, the south end of the dam in question abuts upon property not within the lines of plaintiffs' property. Plaintiffs' rights to so maintain the dam are not drawn in question in this case, and whatever is said here is said solely with reference to the premises in dispute.

It is vigorously urged by the defendant in this case that the cave and the drill hole in its floor is not a monument. Monuments are of two kinds, natural and artificial. Natural monuments are objects permanent in character which are found upon the land as they were placed by nature, such as streams, rivers, lakes, ponds, shores, and beaches. Artificial monuments are landmarks or signs erected by the hand of man. It would seem that the monument in question is a combination of the two; the cave would be a natural monument. Inasmuch as it might have considerable extent, a hole was prepared for the reception of a stake to indicate the particular point where the southeast corner of the premises was located, which is an artificial monument. If the hole in the floor of the cave testified to and pointed out by the plaintiffs and their witnesses was erected by the surveyor who made the original survey, it would seem to be almost conclusive evidence as to the location of the premises. If the defendant's surveyors had correctly established the south line of block 68, which is indicated in the deed as being the starting point, then the proof would seem to show that the person who laid out the Timme property originally made an error in the measurement of the north-and-south

line on the west side. The Dodge survey is impeached to some extent at least by reason of the fact that if adopted it would cut off twenty feet from the east end of the mill building. The French survey offered on behalf of the defendant would cut the mill buildings nearly squarely in two. While the east line of the Tenant survey coincides and aligns quite accurately with the east end of the Timme buildings, it does not appear from the record as to just when the Timme buildings were erected. Apparently, however, they are very old and have been in their present location for many years. Of course that fact alone would not establish the correctness of the survey, but on the evidence in the case it is confirmatory of the Tenant survey and a persuasive circumstance. If there were no monuments referred to in the original deed such as the stake and birch tree at the southwest corner and hole in the cave at the southeast corner, the evidence is very persuasive that defendant's survey correctly establishes the south line of block 68. With that as a starting point as already indicated the south line would be located within the limits of Dell creek, contrary to the calls of the deed. It is elementary that monuments control over courses and distances. On the part of the defendant the testimony of one Edward Fox was produced; his grandfather, Jared Fox, was the original grantor of the mill lot, and he testified that when he was a small boy he was accustomed to fish and swim in and about these premises; that in 1908 the rock and soil foundation below the dam was taken out; that at one time he was along the creek with his father and saw a stake, asked his father what it was, and his father told him it was the original monument of the mill lot; that this stake was located several feet north from the rock wall and was below a path that ran along the rock and soil deposits at the base of the cliff. The stake was near a large rock, under which there was a little cavity that they called a cave. In 1908 the dam went out and the rock and soil formation be-

low the dam was washed away. It seems highly improbable that a surveyor would call a space in loose rocks a cave. That the rocks were loose seems to be demonstrated by the fact that they were swept away in a flood. Fox further testified that the monument testified to by the plaintiffs was not the one pointed out to him by his father. It would appear that if Fox's testimony be assumed to be true and that what he called the cave was north and east of the point pointed out as the cave by the plaintiffs, then the defendant would be still farther out of line, because the line running north from the point north and east of the present cave would fall still farther into the highway, as will be clear by reference to Exhibit 1. That would also place the south line of plaintiffs' property farther north toward the bed of the stream.

These lands were not very valuable when they were surveyed in 1860. The south line of the premises as established by the Tenant survey in a general way conforms to the south shore line of Dell creek. The plaintiffs' predecessors in title were acquiring the premises for use as a water mill, and it was not at that time very important to any one as to the exact boundaries of the premises, particularly on the south shore. The location of the mill was, however, a matter of considerable importance, and if the premises as surveyed gave the plaintiffs' predecessors the right to maintain the dam and to locate their mill conveniently for their uses, the prime objects of the conveyance were accomplished. It is hardly conceivable that the plaintiffs would have erected the mill, or, if the mill was already erected, have consented to a survey which would cut the mill property substantially in half.

The controversy as developed upon the trial presented a clear issue of fact, and if we are to give effect to the well established rule that findings of the trial court are to be sustained unless they are against the great weight and clear

preponderance of the evidence, the conclusion of the trial court in this case must be affirmed. We have not adverted to all of the circumstances in the case nor set out the entire evidence, but we have only indicated that there is in the record substantial evidence from which the trial court might find as it did. There are persuasive circumstances both ways, and a finding either way would meet serious obstacles and present considerable difficulty. A finding in favor of the defendant could be supported upon the evidence, but it, too, would meet as great if not greater difficulties than the finding of the court in favor of the plaintiffs. The property has now become valuable for summer-resort purposes; the boundaries, which under earlier conditions were not matters of great importance, now become highly important. The facts, resting as they did largely in the memory of witnesses now dead, have been lost, and under such circumstances it is considered that the line as established by the judgment of the trial court, resting as it does upon the existence of a natural monument, the cave, and in accord with a very natural and probable purpose of the parties to establish a south line substantially coincident with the south rocky shore of Dell creek, should be sustained.

*By the Court.*—Judgment affirmed.

ESCHWEILER, J., dissents.