McKENZIE, d/b/a McKenzie Construction Company, Respondent, v. WARMKA, d/b/a Warmka Floor & Wall Covering, Appellant.

*No. 75-829. Submitted on briefs December 1, 1977.—*
*Decided January 3, 1978.*
(Also reported in 260 N.W.2d 752.)

---

[16] *Drexler v. All American Life & Casualty Co.*, 72 Wis.2d 420, 432, 241 N.W.2d 401 (1976).

592

For the appellant the cause was submitted on the brief of *Gregory K. Scott* and *Rasmussen Law Offices* of Beaver Dam.

For the respondent the cause was submitted on the brief of *Ralph W. Fink* and *Fink & Fink* of Richland Center.

CONNOR T. HANSEN, J.  Warmka entered into a contract with McKenzie whereby Warmka agreed to install a seamless floor covering in a kitchen at St. Joseph's Memorial Hospital in Hillsboro. The floor covering was to meet certain specifications, and the contract price was to be $3,092.

The flooring subsequently installed by Warmka was rejected by McKenzie because the materials used did not conform to the specifications of the contract and because of alleged, but unspecified, defects of workmanship in the surface of the flooring.

Warmka's efforts to remedy the defects were unacceptable to McKenzie. McKenzie contracted with a third

party to remove the flooring, apparently by grinding it away, and to install new flooring. The cost of removing the unsatisfactory flooring was $744.71, and the cost of the new replacement flooring was $4,100.

McKenzie commenced this action to recover damages in the amount of $1,902.71. This figure represents the difference between the $4,844.71 cost of removing and replacing the flooring, and Warmka's original contract price of $3,092, minus $150 for work which was allegedly not performed.[1] Warmka counterclaimed for the original contract price of $3,092.

The parties stipulated that the matter be submitted to arbitration. The stipulation provided that all matters at issue in the pending action were to be determined by the arbitrator, Sante DeMarco of Rockford, Illinois. The issues were to be submitted to DeMarco "to the end that a determination of the facts and findings made [sic] and filed with the court herein." The arbitrator was to "make a determination of the facts and decided [sic] the issues" after a hearing, and to file a report which could be supplemented "by further findings or determinations by the [trial] court, in the event, in the interests of fairness and justice, the court shall determine need for same." Chapter 298, Stats., was to govern the arbitration, except as otherwise provided in the stipulation. Judgment was to be entered "[u]pon final determination of the matter by the arbitrator and approval or modification of same by the court. . . ."

The arbitrator's "report" consisted of a letter to the trial court. The arbitrator found that Warmka knew that

---

[1] Although on this appeal Warmka uses the full $3,092 figure as the contract price, and asserts a counterclaim for this amount, nowhere does he challenge the $150 deduction made by McKenzie's complaint. Warmka apparently accepts the $1,902.71 figure as the difference between his contract price and the cost of the replacement flooring. Since this figure is reached only by making the $150 deduction, we consider the $150 deduction as correct.

the architect specified one of three franchised products for the job; that Warmka was not a franchised applicator and "went ahead on his own and used an unspecified product." He also found that the floor had not been accepted by McKenzie, the architect or the owner, and that all three said the floor was not satisfactorily installed. Although the arbitrator found that Warmka did not use the type of flooring material specified in the contract, it was the arbitrator's belief that the floor would have been accepted if it had been properly installed.

The arbitrator found that McKenzie was claiming $744.71 for the removal of the flooring installed by Warmka and $1,158 as the difference between the original contract price and the price of the replacement flooring. The arbitrator concluded:

"I do not feel that Mr. McKenzie should have to pay to correct problems created by Mr. Warmka and therefor should be reimbursed the $744.71. I do not believe Mr. McKenzie is entitled to the $1,158.00 as it is a general contractor's responsibility to know the subs and their capabilities prior to signing a contract with them. . . ."

He also stated:

"The above decision is based on my personal judgment of the case. It is my understanding that Your Honor will review this decision and make whatever corrective stipulations he deems to be proper."

Upon receiving the arbitrator's report, the trial court advised the parties that their stipulation for arbitration provided for a hearing before the court would make its findings of fact and conclusions of law. Neither party requested such a hearing within the time specified by the trial court, and the court proceeded to render its decision. In its decision, the court stated:

"A reading of the [arbitrator's] letter shows the following award was made to plaintiff:
"(1) $744.71 for repairs to the floor surface;

"(2) $1158 for completion of the floor by another contractor."

However, the arbitrator had said in his letter, "I do not believe Mr. McKenzie is entitled to the $1,158.00 . . ." The trial court reversed the arbitrator's award with regard to the $1,158 amount. This action was based on the trial court's determination that the arbitrator was appointed to find facts, and not to apply the law. The trial court held the arbitrator had overstepped his authority by "inject[ing] his view of the law of contract into the award of $1158.00." Judgment was entered in favor of McKenzie in the amount of $1,902.71.

Additional facts will be discussed in considering the issues, which are:

1. Was the arbitrator authorized to decide questions of both law and fact, or only to make findings of fact?

2. Should the trial court have vacated the award on the ground that it was not final and complete?

3. Did the trial court err in changing the award with regard to McKenzie's claim for $1,158?

## I.

The trial court, in its decision, stated that the arbitrator:

". . . was appointed to find facts, as is abundantly clear from a reading of the arbitration stipulation. He was not appointed to apply the law."

We do not believe this conclusion is supported by the arbitration stipulation. The stipulation provided:

". . . that in lieu of a trial *all matters at issue* set forth in the Complaint of the plaintiff herein shall be submitted to arbitration. . . .

"That all further proceedings of this action be stayed until such time as *the issues now pending between the*

*parties shall have been determined* by a single arbitrator, . . .

"     .  .  .  .

"The arbitrator shall *make a determination of the facts and decided* [sic] *the issues herein* within a reasonable time. . . ." (Emphasis added.)

McKenzie argues that the arbitrator was authorized only to make findings of fact, and points out that the stipulation provides:

"The parties mutually agree to submit all issues now the subject of this action to said arbitrator to the end that a *determination of the facts and findings made* and filed with the Court herein." [sic] (Emphasis added.)

In isolation, this passage might tend to support the view that the arbitrator was merely to prepare findings of fact. However, the stipulation further provides that the arbitrator was to determine what was variously stated as "all matters at issue set forth in the Complaint. . ."; ". . . the issues now pending between the parties. . ."; ". . . all issues now the subject of this action. . ."; and ". . . the issues. . . ." He was to ". . . make a determination of the facts *and decided* [sic] *the issues* herein. . . ." (Emphasis added.)

This court has recognized that arbitrators ordinarily are expected to determine questions of law as well as fact. In *Madison v. Frank Lloyd Wright Foundation,* 20 Wis.2d 361, 392, 122 N.W.2d 409 (1963), this court observed:

"It is not fatal that the arbitration process . . . will lead to a consideration of mixed questions of law and fact. On the contrary, this is to be expected and is entirely consistent with the basic purpose of arbitration proceedings as a substitute for normal litigation."

Considering the stipulation in its entirety, we are of the opinion that the parties submitted all aspects of their

controversy to the arbitrator for resolution. There is no explicit limitation upon the power of the arbitrator, and the submission of the dispute empowered him to determine questions of law as well as fact.

## II.

Warmka argues that the arbitrator's award was not final or complete and therefore should have been vacated. This argument rests primarily upon the alleged failure of the arbitrator to consider Warmka's counterclaim for the original contract price.

It is the policy of this court to encourage arbitration. *Madison v. Frank Lloyd Wright Foundation, supra,* 374; *In re Lower Baraboo River Drainage Dist.,* 199 Wis. 230, 240, 225 N.W. 331 (1929). An arbitrator's award is therefore presumptively valid and will be disturbed only where invalidity is shown by clear and convincing evidence. *Scherrer Const. Co. v. Burlington Mem. Hosp.,* 64 Wis.2d 720, 735, 221 N.W.2d 855 (1974).

Nevertheless, where the arbitrator so imperfectly executes his power that a final, complete and definite award upon the subject matter is not made, the award will be vacated. The instant parties stipulated that except as specifically provided otherwise, the provisions of ch. 298, Stats., would govern the arbitration proceedings. Sec. 298.10(1)(d) provides that upon application of a party the trial court must vacate the award:

"Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."

This requirement reflects the common-law rule that an award must be definite and certain and sufficiently detailed to finally settle the controversy. *Manitowoc v.*

*Manitowoc Police Dept.,* 70 Wis.2d 1006, 1012, 236 N.W.2d 231 (1975) ; *cf. Reith v. Wynhoff,* 28 Wis.2d 336, 344, 137 N.W.2d 33 (1965).

In *Garstka v. Russo,* 37 Wis.2d 146, 154 N.W.2d 286 (1967), this court upheld the vacation of an arbitration award which determined the value of services performed under a construction contract, but which failed to determine the value of materials used in the construction. This court said:

". . . When a matter is submitted to arbitrators and a final and definite award covering all the subject matter submitted is not made, the arbitration has failed to serve its purpose and should not be accepted. *Canfield v. Watertown Fire Ins. Co.* (1882), 55 Wis. 419, 13 N.W. 252; *Stubbings v. McGregor* (1893), 86 Wis. 248, 56 N.W. 641. It is essential to the validity of the award in the absence of a saving statute that the award be complete, final and terminate the question under arbitration so as to be subject to complete enforcement by a judgment or a decree. 6 Williston, *Contracts* (rev. ed.), pp. 5397, 5398, sec. 1929; 6 C.J.S., *Arbitration and Award,* pp. 226, 235, secs. 81, 89. . . As we said in *Goldmann Trust v. Goldmann* (1965), 26 Wis.2d 141, 150, 131 N.W.2d 902, 'An arbitration award must be final and must not "naturally lead to and stimulate new controversies and litigation, instead of securing the object sought to be attained by the arbitration of finally and definitely settling the old controversy." ' " *Garstka v. Russo, supra,* at 150.

In the instant case the arbitrator did not explicitly mention the Warmka counterclaim for the original contract price of $3,092. However, the trial court could and did reasonably determine that the denial of that counterclaim was implicit in the arbitrator's report. The trial court therefore properly denied the counterclaim.

The arbitrator stated that he had found no evidence that the floor as installed by Warmka had ever been accepted, "and so for that reason I must rule against Mr. Warmka." The arbitrator proceeded to state his opinion

that McKenzie should be reimbursed for the $744.71 cost of removing the unsatisfactory flooring. This decision can most reasonably be understood as a denial of the counterclaim and a partial approval of the McKenzie claims.

This conclusion is supported by the decision of this court in *Scherrer Const. Co. v. Burlington Mem. Hosp.*, *supra*. There this court rejected the argument that an award was defective because it did not deal separately with two damage claims, but simply awarded a single sum in settlement of various conflicting claims. This court said:

". . . Arbitration awards need not separately treat each claim and counterclaim where a specific sum is awarded expressly to satisfy all such claims and counterclaims. . . ." *Scherrer Const. Co. v. Burlington Mem. Hosp.*, *supra*, at 736.

Even more to the point is *Koepke v. E. Liethen Grain Co.*, 205 Wis. 75, 79, 80, 236 N.W. 544 (1931). There this court held that an award was not defective because the arbitrators failed to make findings as to fourteen of thirty-one items of damages asserted. This court stated that these items were deemed to be decided adversely to the claimant when the arbitrators, after submission of all the claims, awarded a single net amount with no allowance for the fourteen items in question. The court added:

". . . Even if the omission to find as to those items was due to a mistake on the part of the arbitrators, nevertheless the omission was in effect a disallowance of those items, which became final and conclusive when the award was made and proper notice thereof was given to the interested parties. . . ." *Koepke v. E. Liethen Grain Co.*, *supra*, at 80.

This reasoning is applicable here. By approving an award of $744.71 to McKenzie and making no allowance

for the counterclaim, the arbitrator effectively denied the counterclaim, and his report cannot be considered fatally defective for failure to state the denial more explicitly.

Warmka further argues that the arbitrator's award must be vacated because it contains insufficient findings of fact. An arbitrator need not render an account of the reasons for his award. *Manitowoc v. Manitowoc Police Dept., supra,* at 1016. An arbitration award which awards a sum of money in satisfaction of the various claims of the parties need not separately treat each claim or explain the arbitrator's reasoning process. *See: Scherrer Const. Co. v. Burlington Mem. Hosp., supra,* at 735, 736. The award of the arbitrator was not fatally incomplete.

### III.

In addition to denying the counterclaim, the trial court reversed the arbitrator's decision with regard to the $1,158 difference between the original contract price and the replacement contract price. Although the arbitrator did not believe McKenzie was entitled to this amount, the trial court ruled that he was. The court considered that the arbitrator had improperly injected an erroneous understanding of the law of contract damages into his decision.

The ruling of the trial court presents two related questions: Did the trial court have sufficient facts on which to base such a change in the award, and did the trial court have the authority to change this particular award because it was of the opinion the award was based on an erroneous view of the law?

We believe that the trial court was without sufficient facts on which to determine the principles of law applica-

ble to McKenzie's damages and therefore should not have disturbed the arbitrator's award.

Where there has been substantial but defective performance of a building contract, one of two measures of damages will be applicable:

". . . Generally, the measure of damages is the cost of correcting the defect or completing the omission and with this money, the aggrieved party can specifically correct the defects and supply the omissions. This measure of damages is practical and attains the desired result only when the correction or completion does not involve unreasonable destruction of the work done so that *the cost of corrections is not materially disproportionate to the value of the corrections.* If reconstruction and completion in accordance with the contract involves unreasonable economic waste, then the rule as to those defects at least is the difference between the value the building would have had if properly constructed and the value that the building does have as constructed. . ." (Emphasis added.) *W. G. Slugg Seed & Fertilizer v. Paulsen Lumber,* 62 Wis.2d 220, 225, 226, 214 N.W.2d 413 (1974); *Plante v. Jacobs,* 10 Wis.2d 567, 103 N.W.2d 296 (1960).

In determining which of these two measures applies, consideration must be given to the relationship between the cost of repair or reconstruction and the value of the corrections. In the instant case the arbitrator made no findings with regard to the effect of the replacement of the flooring on the value of the building. His report offers no intimation as to the diminished value of the flooring as a consequence of the unidentified defects.

The failure of the arbitrator to set forth his theories or support his findings is not grounds for objection to the arbitrator's award. *Scherrer Const. Co. v. Burlington Mem. Hosp., supra,* and *Koepke v. E. Liethen Grain Co., supra.* Nor is the award objectionable for failure to employ a particular theory of value. This court has said:

". . . If the parties intended to limit the expert in his opinion to certain theories of establishing value, the

stipulation should have so provided." *Reith v. Wynhoff,* *supra,* at 344.

However, the failure of the arbitrator to set forth his theories or to make findings with regard to the diminished value of the building or the value of the corrections leaves the trial court with little or no basis for changing or modifying the award.

In *De Sombre v. Bickel,* 18 Wis.2d 390, 398, 399, 118 N.W.2d 868 (1963), this court said that a trier of fact must have an evidentiary basis for a determination of value by either the "cost of repair" or "diminished value" method. The court said:

">. . . Neither a court nor a jury as the trier of the facts can determine damages by speculation or guesswork. The trier of the fact may make a reasonable estimate of the damage based on relevant data and evidence, but such evidence is lacking in this case. Damages must be proven with reasonable certainty. . . ."

In the instant case, in the absence of any evidentiary basis for measuring McKenzie's damages, the trial court should have adhered to the rule that an arbitrator's award will not be set aside for use of an improper theory of value. The arbitrator's denial of McKenzie's claim for the $1,158 should therefore have been sustained.

■

Ordinarily, the award of an arbitrator is subject to only limited judicial review. The court to which an award is returned may generally modify the award only on the grounds specified by statute. 6 C.J.S., *Arbitration,* sec. 168, pp. 438–440. Sec. 298.11(1), Stats., provides only three grounds for modification of an arbitrator's award.[2] None of these grounds is applicable here.

---

[2] ". . . *Modification of award.* (1) In either of the following cases the court in and for the county wherein the award was

Since we determine that the trial court did not have sufficient facts on which to base a change in the award, we do not reach the question of whether, under the terms of this particular stipulation, he had authority to make such a modification of the award.

We therefore conclude that the arbitrator was authorized to determine questions of law as well as fact, and that the award of the arbitrator implicitly denied the counterclaim of Warmka. The judgment of the trial court denying the counterclaim is affirmed. That portion of the judgment which rejected the arbitrator's denial of the claim of McKenzie for $1,158 is reversed. The cause is remanded with directions to enter judgment in favor of McKenzie in the sum of $744.71.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded.

---

made must make an order modifying or correcting the award upon the application of any party to the arbitration:

"(a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing or property referred to in the award;

"(b) Where the arbitrators have awarded upon a matter not submitted to them unless it is a matter not affecting the merits of the decision upon the matters submitted;

"(c) Where the award is imperfect in matter of form not affecting the merits of the controversy."